UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20378-MC-UNGARO/SIMONTON

<u>CONSENT CASE</u>

IN RE: APPLICATION OF INVERSIONES
Y GASOLINERA PETROLEOS VALENZUELA,
S. DE R.L., ET AL.,

        Applicants,

_____/

Exxon Mobil Corp.,

        Non-Party Witness Respondent.

_____/

<u>ORDER DENYING THE APPLICANTS' MOTION TO COMPEL DISCOVERY</u>

Presently pending before the Court is the Motion to Compel Discovery, filed by

Applicants Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L., Inversiones y

Gasolinera Servicentro Kuwait Valenzuela, Kuval S. de R.L., Inversiones y Gasolinera

Servicentro Atlas, S. de R.L., and Inversiones Petrolera Petroval, S. de R.L. (DE # 5).  This

matter is referred to the undersigned Magistrate Judge based upon the consent of the

parties (DE # 54).  This motion is fully briefed (DE ## 15, 16, 22, 23, 32-35, 38, 42-46, 56-

61).[1]  On December 2, 2009, the undersigned Magistrate Judge held a hearing on the

_____

[1]  **Exxon Mobil Corporation ("Exxon") and ExxonMobil Inter-America Corporation
("EMIA") filed a joint response (DE # 15), while Esso Standard Oil, S.A. ("Esso") filed a
separate response on jurisdictional grounds (DE # 16).  The Applicants replied
separately to each (DE ## 22, 23), and Respondents filed sur-replies (DE ## 32, 33),
which the Applicants have moved to strike (DE ## 30, 31).  Respondents also filed a
supplement to their joint response (DE # 35).  The Applicants filed a response to the
supplement, two more supplements, affidavits and translations (DE ## 38, 42, and 44-46).
Respondents filed a response to DE # 42 (DE # 43).  Pursuant to this Court's Order that
the parties file a joint statement concerning the status of all relevant proceedings in
Honduras (DE # 55), the parties each filed a unilateral statement regarding the Honduran
proceedings (DE ## 56, 57).  Immediately before the hearing, Respondents filed: 1) a
motion for this Court to take judicial notice of a website (DE # 58); a notice of filing
declaration (DE # 59) a supplement to its unilateral statement regarding the Honduran**

motion.  Based upon a thorough review of the record, on the oral arguments of counsel and for the reasons stated herein, the Motion to Compel is denied.  Specifically, the undersigned concludes that although the statutory prerequisites of 28 U.S.C. § 1782 to grant the Application for assistance are present, the subpoena to Exxon should be quashed pursuant to Fed. R. Civ. P. 45.

I.     **BACKGROUND**

The Applicants filed an *ex parte* request for judicial assistance to obtain discovery in furtherance of a foreign criminal investigation pursuant to 28 U.S.C. § 1782 (DE # 1).  The Application alleged that the Applicants had filed criminal charges against Esso Standard Oil, S.A., Limited ("Esso"), which is a subsidiary of Exxon Mobil Corporation, and others, with the State Attorney's Office in Tegucigalpa, Honduras.  After an investigation, the State Attorney's Office issued an Order which filed formal criminal charges, including violations of the anti-fencing and anti-fraud provisions of Honduras' Criminal Code.  The State Attorney's Order was affirmed in part and reversed in part by the Attorney General's Office, which rejected certain challenges to the State Attorney's Order made by Esso and other defendants, but which directed the State Attorney's Office to "broaden its investigations by utilizing other discovery tools that may enable it to clearly determine the existence of criminal liability in the matter submitted to its consideration" (DE # 1 at 3).  The Application before this Court sought discovery in aid of the criminal proceedings in Honduras.  Although it is not clear from the initial Application (due in part to the lack of translation of the exhibits attached to the Application), the subsequent memoranda filed by both parties establish that the nature

---

proceedings (DE # 60), and a notice of supplemental authority (DE # 61).

of the investigation concerns Esso's policies and practices for the sale of fuel and other oil derivatives in Honduras (DE ## 15, 22).

The District Judge previously assigned to this case issued an Order granting the Applicant's request and administratively closed the case (DE ## 3, 4). The Order provided that within 10 days of the execution of the Order, Esso Standard Oil, S.A., Ltd. and the Latin-American division of its parent company, Exxon Mobil Corporation were required to:

1. "make available [for deposition] a principal officer having authority to answer questions . . . as to all transactions, dealings, and communications or interactions that pertain, reference, or mention Esso's and Exxon-Mobil Latin-American division's policies and procedures regarding the sale or commercialization in Honduras of gasoline and other oil derivatives pursuant to Honduras' Law 441-79, and any transactions with the applicants";

2. produce any documents containing general background information regarding the corporate structure of both Esso and "the Latin-American division of its parent company, Exxon-Mobil", throughout Latin America; and,

3. produce documents relating to the Applicants and Francisco Valenzuela (DE # 3).

Based upon this Order, the Applicants' counsel issued a subpoena duces tecum to the Latin-American division of Exxon Mobil Corporation which sought testimony and the production of documents with respect to the matters described in the Order (DE # 5-1). Two attempts to serve this subpoena were unsuccessful. First, an attempt was made

to serve the corporation at an address in Coral Gables, and service was refused on the ground that only Exxon Inter-America had its office at that address. Next, the registered agent of Exxon Mobil Corporation, Corporation Service Company, refused service since the name of the company on the subpoena was not identical to the company name on file with the Secretary of State of Florida (DE # 5 at 5). Thereafter, a second subpoena was issued to Exxon Mobil Corporation, and service was accepted by Corporation Service Company (DE ## 5-4, 5-7).

Exxon Mobil refused to appear in response to this subpoena on the grounds that it failed to allow a reasonable time to comply and improperly required the deponent to travel more than 100 miles from where the deponent resides, is employed or regularly conducts business; it was issued in a closed case; and, did not comport with the Order which authorized it to be issued (DE # 5-10).

Thereafter, the Applicants filed this Motion to Compel, arguing that Esso and the Latin-American division of Exxon Mobil Corporation improperly refused to accept service of their subpoenas and failed to comply with their obligation to provide discovery in accordance with this Court's Order (DE # 5).

The Applicants' Motion to Compel Discovery engendered two separate responses from three separate entities: Exxon Mobil Corporation ("Exxon") and Exxon Mobil Inter-America Corporation ("EMIA") filed a joint response (DE # 15), while Esso Standard Oil, S.A. ("Esso") filed a "Limited Objection on the Ground of Lack of Personal Jurisdiction," and adopted the substantive arguments raised in Exxon's response in the event that its jurisdictional argument was rejected (DE # 16 at 1 n.1).

The Exxon Entities contend that the discovery sought by the Applicants is a "fishing expedition," which is intended as a retributive measure in response to Esso's

decision to terminate a contractual relationship that previously existed between the Applicants and Esso (DE # 15).  According to their briefs, the Exxon Entities contend that the Applicants have improperly ignored the separate corporate identities of Exxon, EMIA and Esso when attempting to effectuate service and, thus, as to EMIA and Esso, the subpoenas, in particular, are invalid since they are not named in them (DE # 15 at 21-28). In addition, the Exxon Entities assert that, even if they were properly served, (1) the application for judicial assistance under 28 U.S.C. § 1782 was defective because the discovery was not sought "for use in a proceeding before a foreign or international tribunal" as § 1782 requires (DE # 15 at 7-11); (2) the application was filed prematurely (DE # 15 at 12-13); (3) the Court should have exercised its discretion and denied the application because it really concerns Esso, not Exxon and EMIA  (DE # 15 at 19); (4) the application improperly relied on Spanish-language documents that were not translated (DE # 15 at 19-21); (5) the discovery sought is irrelevant and confidential (DE # 15 at 11-12); (6) the discovery sought encompasses information that is not within Exxon's possession custody or control (DE # 15 at 13-17); and (7) any attempted service on Exxon Mobil Corp. was improper because the subpoena improperly changed the name of the authorized deponent from "the Latin-American Division of Exxon Mobil Corporation" to "Exxon Mobil Corporation; and, because under Fed. R. Civ. P. 45 the only proper place to serve the subpoena is at the corporate headquarters in Irving, Texas[2] (DE # 15 at 25-28).

      In a separate set of responsive papers, Esso contends that the Court lacks jurisdiction over it because it is not "found" in this District, as section 1782(a) requires

---

      [2]  Irving, Texas is located within the jurisdiction of the United States District Court for the Northern District of Texas.

(DE # 16).

The Applicants dispute each of the contentions raised by Exxon, EMIA and Esso (DE # 22).

Initially, although it appeared from the papers filed by the Applicants that they sought discovery only from Exxon Mobil, there was some ambiguity.  This was clarified at the hearing held regarding the Motion to Compel, when the Applicants expressly stated that they were not seeking to compel documents from Esso or from EMIA; that the subpoena they sought to enforce was directed only at Exxon Mobil.[3]  The Applicants stated that the policies at issue were established by Exxon Mobil in its office in Coral Gables, Florida; that the relevant documents, as well as the person with knowledge of the corporate policies at issue, are located in the Coral Gables office; and, that is why they filed the Application in this District (DE # 64 at 16-21, 73 ("EMIA we never subpoenaed"), at 78 ("we are not seeking discovery against EMIA formally")).  The Applicants clarified that they were seeking discovery from Exxon, which they contend has an office in Coral Gables; and, acknowledged that if the corporate representative with the most knowledge resided in Texas, the deposition would have to occur in Texas (DE # 64 at 81-83).  They contended, however, that they could issue a subpoena from the relevant District Court in Texas based upon the Order which granted the Application filed in this District (DE # 64 at 83).

Prior to the hearing, due to the ongoing nature of the proceedings in Honduras as reflected in the memoranda submitted after the entry of the original Order, the

---

[3]  At the hearing, counsel for the Applicants stated, "Now, with respect to the more important questions Your Honor has raised with respect to who we are seeking discovery [from], we are seeking discovery against Exxon Mobil Corp." (DE # 64 at 78).

undersigned directed the parties to submit a joint statement regarding the status of all proceedings pending in Honduras (DE # 55). The parties were unable to agree on a joint statement, and, therefore, the Applicants filed a unilateral Statement (DE # 56), and Exxon filed separately its "portion" of the Joint Statement (DE # 57), as well as a Request for Judicial Notice (DE # 58), a Declaration of Joel Serrano as an expert in Honduran law (DE # 59), a Supplement to its Statement (DE # 60), and a Notice of citation to additional authority (DE # 61).

The Applicants stated that there are three ongoing proceedings in Honduras, two of which are civil and one of which is criminal (DE # 56 at 4). At the hearing, however, the Applicants acknowledged that the basis of the pending request is the criminal proceeding; and, therefore the civil proceedings are not discussed further in this Order (DE # 74 -75). With respect to the ongoing nature of the criminal proceedings, the Applicants rely primarily on a November 4, 2009, order entered by the Honorable Luis Alberto Rubio Avila, Attorney General of the Republic of Honduras (DE # 56 at 4). According to the certified translation, this Order states, in its entirety:

> **HAVING CONSIDERED**: the request for reinstatement presented by Attorney **MARCO TULIO CASTRO CANALES**, legal representative of Mr. **FRANCISCO JOSE VALENZUELA MARADIAGA**, in his capacity as general manager of **INVERSIONES Y GASOLINERA SERVICENTRO KUWAIT, KUVAL**, S. de R.L., in the criminal investigation for the alleged commission of the crime of embezzlement and other frauds against Mr. Francisco Valenzuela, which was filed to request that the General Prosecutor proceeds to replace the resolutions issued on dates December 8, 2008 and February 20 of the current year; and pursuant to which the General Prosecutor of the Republic, following analysis of the referenced proceedings, determines **WHEREFORE** as follows: **1.-**Revokes the resolutions issued on December 8, 2008 and February 20 of the current year; notwithstanding, the criminal investigation shall

> continue in order that the Prosecutor of Common Crimes may determine the appropriateness or not of a criminal action; **2.- Remands the file to the General Secretariat of the Attorney General's Office, to issue due notification to the parties; and, subsequently, the file shall be remanded to the Prosecutor of Common Crimes to continue with the investigations pursuant to the principles of Legality and Due Process-.** **LET THE FOREGOING BE NOTIFIED**.

In response to this Statement, Exxon described the interim proceedings which led to it. Specifically, Exxon states that in December 2008, the Honduran Attorney General confirmed that the Applicants' criminal complaint stemmed from a purely civil dispute; and that on February 20, 2009, a refiled request for institution of criminal proceedings was dismissed by the Honduran Attorney General (DE # 57 at 2). Exxon states that the appeal which led to the above Order was improperly filed, and that there was no further activity until notification of the above Order was issued on November 16, 2009; which was the day before the deadline for filing the Joint Statement of Proceedings ordered by this Court (DE # 57 at 3). Exxon contends that this was suspiciously timed, and that it was the result of the "Applicants' constant maneuvering and seeming political pressure on the Honduran attorney general's office." (DE # 57 at 3).

To support its position that the November 4, 2009 decision by the Honduran Attorney General contravenes Honduran law, Exxon filed the Declaration of Joel Serrano, an expert in Honduran law (DE # 59). Exxon summarizes this Declaration by providing the three basis for the invalidity: First, the February 20, 2009 decision became final and binding on March 11, 2009, and thus it was improper for the Attorney General to grant the untimely filed Motion for Reconsideration, which was not filed until March 23, 2009. Second, the Attorney General improperly relied upon Administrative Law, which does not apply to criminal investigations. Third, Esso may present a legal challenge to the

November 4, 2009 decision (DE # 59).

At the hearing, counsel for Exxon stated that no appeal from the  February 20, 2009, Order had been taken as of the date of the hearing, and he did not know when the time for an appeal would expire (DE # 64 at 50-51).  Exxon argued, however, that the fact that no formal criminal proceedings had yet been brought demonstrated that they were not imminent, and not within reasonable contemplation; therefore, the request was premature (DE # 60; DE # 64 at 51-54).

There has been no further update regarding the status of proceedings in Honduras.  Therefore, the undersigned finds that the November 4, 2009 decision of the Honduran Attorney General sets forth the present status of the proceedings in Honduras regarding the criminal investigation.

II.    **LEGAL STANDARDS**

As discussed in more detail below, this Court must first determine whether it has jurisdiction to consider the Application pursuant to 28 U.S.C. § 1782; and, if so, must then consider whether the subpoena was issued and served properly, and whether to exercise its discretion to enforce the subpoena.

Title 28, United States Code, Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made . . . upon the application of any interested person . . . .  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  Thus, a district court has the authority to grant an application for

judicial assistance if the following statutory requirements are met: (1) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance; (2) the request must seek evidence which is either the "testimony or statement" of a person or the production of "a document or other thing;" (3) the evidence must be "for use in a proceeding in a foreign or international tribunal;" and (4) the request must be made by "an interested person."

Assuming that the above requirements are met and the district court is statutorily authorized to grant an application for judicial assistance under § 1782, it maintains the discretionary authority to deny the application based on the four factors enumerated by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).[4]  First, in *Intel*, the Court counseled that it was appropriate to consider whether the person from whom discovery is sought is a participant in the foreign proceeding, because the need for judicial assistance may be reduced in instances where "a foreign tribunal [with] jurisdiction over those appearing before it . . . can itself order them to produce evidence." *Id.* at 264.  Second, "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id.*  Third, "a district court could consider whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 265.  Fourth, and finally, "unduly intrusive or burdensome

---

[4]  *See also United Kingdom v. United States*, 238 F.3d 1312, 1318 (11th Cir. 2001) ("Whether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court.").

requests may be rejected or trimmed." *Id.*

Courts have often cited the legislative history accompanying the 1964 amendments to § 1782, which emphasize the twin aims of the statute to (1) provide efficient assistance to foreign tribunals and litigants; and (2) encourage foreign countries to similarly improve their procedures for providing assistance to American courts. *See* S. Rep. No. 88-1580 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3782, 3783; *see also In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002); *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002).

Once a court determines that the above requirements of section 1782 are met, the next step is to determine whether the requested discovery complies with the Federal Rules of Civil Procedure.  Thus, if the applicant issues a subpoena to a non-party who is residing or found within the district, the subpoena must comply with Rule 45.  For example, in *Edelman*, the Second Circuit held that section 1782 applied to a witness "found" in the district, and then remanded the case to the district court to determine whether the subpoena satisfied the requirements of Fed. R. Civ. P. 45.  *Edelman* at 180-81.

Similarly, in *In re Application of Qwest Commc'ns Int'l Inc.*, 2008 WL 2741111 (W.D.N.C. Jul. 10, 2008), the Court first examined the statutory jurisdictional prerequisites, followed by the *Intel* factors, and concluded that discovery was appropriate pursuant to section 1782.  In so doing, however, the Court noted that the rights of the subpoenaed party would not be prejudiced because the Rule 45 subpoena could be challenged by that party pursuant to the requirements of that rule.  Likewise, in *In Application of Yukos Hydrocarbons Invs. Ltd.*, 2009 WL 5216951 (N.D.N.Y. Dec. 30, 2009), the Court found that the applicant had met the jurisdictional requirements of

section 1782, but quashed the subpoena because it sought to depose a person outside of 100 miles from his residence, contrary to the provisions of Rule 45.

The parties agree that the issuance of a subpoena with respect to a non-party to the underlying foreign proceedings, such as Exxon, is governed by Fed. R. Civ. P. 45. Pursuant to Rule 45(c)(3)(A)(ii), the Court must quash or modify a subpoena that requires a non-party witness to travel more than 100 miles from the place where that person resides, is employed or regularly transacts business. Thus, if, as Exxon contends, its corporate representative is located in Irving, Texas, the subpoena issued from the Southern District of Florida must be quashed. If, on the other hand, as the Applicants contend, the relevant corporate representative is located in Coral Gables, Florida, the subpoena complies with the rule. *See Ariel v. Jones*, 693 F.2d 1058 (11th Cir. 1982). In addition, other subsections of Rule 45(c)(3)(A) permit the Court to quash or modify a subpoena if it requires the disclosure of privileged or other protected matter; or, subject a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iii-iv).

III.    DISCUSSION

A.    No Discovery is Sought from EMIA or Esso

At the hearing, the Applicants conceded that they did not seek discovery from EMIA or from Esso (DE # 64 at 78, and *passim)*. Therefore, any issues regarding whether the Order granting the Application is valid as to EMIA or Esso, including the issue of personal jurisdiction over Esso, are moot. Therefore, Esso's Objection on the Ground of Lack of Personal Jurisdiction (DE # 16), and Applicant's Motion for Reconsideration of Order Granting Esso's Motion for Extension of Time (DE # 30), are moot.

B.      The Jurisdictional Prerequisites of Section 1782

1.      Exxon Is Found In This District

The foreign judicial assistance statute by its plain terms authorizes "[t]he district court of the district in which a person . . . *is found*" to produce discovery for use in a foreign proceeding.  28 U.S.C. § 1782(a) (emphasis added).  There is no binding authority that governs this Court's inquiry into whether a corporation, such as Exxon, is "found" in this district for the purposes of section 1782 where it is neither incorporated nor has is principal place of business.  The undersigned finds persuasive guidance, however, from other cases, such as *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007).  In *Godfrey*, the district court began by noting that the applicants "have cited no case finding that a corporation resided or was found in a district where the corporation was neither incorporated nor headquartered there."  The *Godfrey* court noted that the drafter of section § 1782 explained that the use of the term "found" could also "be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence."  *Id.* (*citing* Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 10 (1998)).  Moreover, in *Godfrey*, the court noted that another federal court "found that a foreign parent corporation headquartered in Germany did not reside and was not found in the Western District of Michigan even though it owned a controlling interest in a subsidiary with headquarters in the district [and] alleged [in another case] that it had a place of business [in that district]."  *Id.* (citing *In re Application of Nokia Corp.*, No. 1:07-MC-47, 2007 WL 1729664, at *3-4 (W.D. Mich. June 13, 2007)).  The business entities at issue in *Godfrey* were not incorporated, headquartered, or conducting systematic business activities in the District; and,

therefore, were not subject to the jurisdiction of the Court.  526 F. Supp. 2d at 422.

Consistent with *Godfrey*, and the legal authorities cited therein, the undersigned concludes that, if a corporation's place of incorporation or headquarters is outside of the district, the applicant must establish that the corporation undertakes "systematic and continuous local activities" in order for the corporation to be found there for the purposes of section 1782.

In the case at bar, Exxon does not contest the fact that it conducts systematic and continuous activities in this District such that, if it were sued as a defendant in an ordinary civil lawsuit, the Court would have personal jurisdiction over Exxon.  However, Exxon contends that in the context of an action brought under Section 1782, it is not "found" in this District because its corporate headquarters are not located here and Rule 45 of the Federal Rules of Civil Procedure protects Exxon, as a non-party witness, from having to submit to a deposition in this District.

The position of Exxon that it may be "found" in this District for purposes of a civil lawsuit filed against it; but not "found" in this District for purposes of section 1782 is not well founded.  The undersigned recognizes, as stated in *Godfrey*, that a number of cases which have determined that the subject corporation was not "found" in the District within the meaning of section 1782 have noted that the corporation was not incorporated or headquartered within that District.  However, those Courts also found a lack of continuous and systematic activity which would otherwise subject the corporation to personal jurisdiction.  *See, e.g., Godfrey; Nokia.*

The equivalence of the requirement of being "found" in the jurisdiction for purposes of personal jurisdiction with respect to a civil lawsuit against the party and for purposes of section 1782 is illustrated by the opinion of the Court in *In re Application of*

*Edelman*, 295 F.3d 171 (2d Cir. 2002).  There, the Court recognized that the requirement of being "found" within the District must be liberally interpreted, and was satisfied when a non-party person traveled to the United States and was served with a subpoena for deposition pursuant to section 1782.  In reaching this result, the Court noted that if so-called tag jurisdiction was sufficient to subject a person to liability, it was sufficient to subject a potential witness to discovery proceedings.  295 F.3d at 179-80.  *Accord In re Application of Yukos Hydrocarbons Invs. Ltd.*, No. 5:09-MC-0078, 2009 WL 5216951 (N.D.N.Y.  Dec. 30, 2009); *See* Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l. L. & Com. 1, 10 (1998) ("The evident statutory purpose [of section 1782] is to create adjudicatory authority based on presence.").

Therefore, in the case at bar, since it is undisputed that Exxon is subject to personal jurisdiction in this District by virtue of its continuous and systematic activities, the undersigned concludes that Exxon is "found" here within the meaning of section 1782.[5]

### 2.   The Request Seeks Appropriate Categories of Discovery

There is no dispute that the second requirement is met since the evidence sought in the Application is  the "testimony or statement" of a person and the production of "a document."

---

[5]  However, as stated by the courts in *Edelman* and *Yukos*, even though a person may be "found" in the District for purposes of the jurisdictional requirements of section 1782, that does not necessarily mean that the person will be forced to be deposed there. Rather, as discussed in detail later in this Order, the protection against an unduly burdensome subpoena is provided by the Federal Rules of Civil Procedure.  *Edelman*, 295 F.3d at 181; *Yukos*, at *4 - *6.

3.   The Evidence Sought Is for Use in a Proceeding
in a Foreign Tribunal

The parties vigorously dispute whether the investigation in Honduras qualifies as a proceeding in a foreign tribunal. For the reasons stated below, the undersigned concludes that the investigation in Honduras qualifies as such a proceeding.

Exxon contends that the discovery sought by the Applicants was not for use in a proceeding before a foreign tribunal or foreign criminal investigation as § 1782 requires; and, therefore, the Court lacked the authority to issue the Order granting Applicant's *Ex Parte* Request for Judicial Assistance (DE # 15).

In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the United States Supreme Court provided guidance regarding the interpretation of section 1782. The Court expressly and unequivocally resolved certain areas of confusion by holding that: (1) there is no "foreign discoverability requirement" which must be satisfied before obtaining discovery pursuant to section 1782;[6] (2) there is no requirement that the foreign proceeding be "pending" or even "imminent" as long as the proceeding is "within reasonable contemplation"; and, (3) the Commission of the European Communities qualifies as a tribunal and a complainant before that Commission is an "interested person" entitled to seek relief under section 1782. *Intel*, 542 U.S. at 253-54. Although the Court in *Intel* provided much guidance regarding the interpretation of section 1782, the Court was not called upon to determine the precise issue before this Court. Though the Court stated that in order for section 1782 to apply, a dispositive

---

[6]  With respect to his holding, the Supreme Court expressly overruled the contrary precedent in the Eleventh Circuit Court of Appeals in *In Re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988). *Intel*, 542 U.S. at 253-54.

ruling by the European Commission must "be within reasonable contemplation," there is a dearth of authority applying this standard to cases such as the case at bar, which involve a criminal investigation prior to formal accusation, and where the Applicant is a private citizen rather than a governmental entity.  *Id.*[7]  However, for the reasons stated below, the undersigned finds that the discovery sought by the Applicants is for use in a foreign criminal investigation and that proceedings before a judicial tribunal are within reasonable contemplation.

At the outset, the undersigned finds that the most recent decision of the Honduran Attorney General, in November 2009, controls the determination of this issue; however, a brief review of the prior proceedings in Honduras is warranted.

On September 4, 2006, the Applicants filed a criminal complaint in Honduras alleging that Esso committed fraud in connection with its sale of fuel (DE # 22, Ex. A at 4).  Then, on June 6, 2007, the Public Prosecutor's Office issued a writ finding evidence to support the Applicants' criminal claims (DE # 22, Ex. A at 11).  On September 3, 2007, the Adjunct Attorney General's Office in Honduras issued a document in which it stated

---

[7]  The treatise cited by the Supreme Court in support of its conclusion that a Commission ruling be within "reasonable contemplation" simply states that "[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding."  *Intel*, 542 U.S. at 259 (internal alterations omitted) (citing Hans Smit, *International Litigation under the United States Code*, 65 Colum. L. Rev. 1015, 1026 (1965)).  *See also* Nanda & Pansius, 3 Litigation of International Disputes in U.S. Courts § 17:49 (2008) ("The reasonable contemplation standard perhaps requires some further development, particularly in the criminal area.").  With respect to the use of section 1782 in the context of criminal proceedings, *see generally In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686 (D.C. Cir. 1989) (formal criminal proceedings not required, it is sufficient that judicial proceedings be within reasonable contemplation); *Al Fayed v. United States*, 210 F.3d 421 (4th Cir. 2000) ("Although it is not clear whether a private party's appeal from a magistrate's decision to close a criminal investigation is the sort of "proceeding" to which Congress sought to extend the assistance of the federal courts, we do not decide the case on this ground.").

that

> there are circumstances, documents and other evidence establishing the
> existence of intentional misconduct, which, therefore, might constitute a
> criminal offense[; that] there are actions that may be prosecuted . . . in the
> criminal courts[; and that the prosecutor should] expand its investigation
> by conducting other investigatory proceedings that will enable it to clearly
> determine the existence of criminal responsibility in the matter submitted
> to it.

(DE # 33, Ex. B at 1-3).  Exxon characterized this as an "instruction" to undertake an "industry-wide investigation" which the "Applicants have failed to show has been or ever will be, opened" (DE # 33 at 6).  Exxon asserted, moreover, that the Honduran government had not requested any testimony or documents from Esso since the order expanding the criminal investigation was handed down. (DE # 15 at 9-10; DE # 33 at 5-6).

Thereafter, interim Orders on December 8, 2008, and February 20, 2009, dismissed the Criminal Complaint which had been filed by the Applicants.  However, those Orders were later revoked, as stated above, on November 4, 2009.  Although Exxon challenged the validity of the November 4th Order, and stated it was pursuing that challenge in Honduras, there is no evidence before this Court that such a challenge has been made.

Exxon has suggested that Esso was implicitly absolved of wrongdoing because the Honduran prosecutor was charged with conducting an industry-wide investigation, the order of the Attorney General's Office explicitly states that the "Department of Justice, rather than restricting the criminal investigation [which began with the Applicants' complaint against Esso, shall] *extend* it to the other fuel importers and intermediaries" (DE # 33, Ex. B. at 3) (emphasis added).  There is no indication anywhere in the record that the expanded investigation into the alleged criminal activity has ceased; and, the fact that a nationwide and "industry-wide investigation" into the selling practices of gasoline providers has not yet resulted in formal criminal proceedings does

-18-

not mean that such proceedings are not still within "reasonable contemplation."  *See In re Wilhelm*, 470 F. Supp. 2d 409, 411 n.1 (S.D.N.Y. 2007) ("[T]he 1996 amendment to § 1782(a) amplifies the definition of 'a proceeding in a foreign or international tribunal' by the phrase 'including criminal investigations conducted before formal accusation.'  It is worth noting that the 1996 amendment said 'before,' not '*just* before,' an accusation.").  This is particularly true since only a matter of days had elapsed between the date of the hearing in this case and the date that the criminal proceedings were reinstituted and the case remanded to the Prosecutor of Common Crimes.

        Exxon's remaining arguments, which are scattershot throughout their briefs, do not alter the analysis.  First, Exxon states that the Applicants took "a rather circuitous route to obtain discovery regarding Esso that is presumably obtainable through the Honduran courts" and claims that the Applicants' failure to obtain the discovery this way proves that there is no active and ongoing criminal investigation.  Adopting Exxon's position would impose a de facto exhaustion requirement and frustrate the broad remedial purpose of § 1782.  *See Weber v. Finker*, No. 3:07-mc-27-J-32MCR, 2007 WL 4285362, at *5 (M.D. Fla. Nov. 30, 2007) ("[A]s Petitioner points out, she is not required to exhaust all [foreign] discovery avenues before seeking discovery through § 1782(a).") (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995)).  Finally, the parties dispute whether Honduran Law 441-79 which "form[s] the basis for the alleged investigation into Esso" was abrogated by Executive Decree 377-92 (DE # 15 at 5); and, whether the Executive Decree has binding effect (DE # 22 at 7-8).  The undersigned simply notes that the evidence in the record indicates that a criminal investigation commenced, and that there is no indication that it was terminated pursuant to an Executive Decree, or for any other reason.

**C.**    **Discretionary Factors Mandate Denial of the Application for Judicial Assistance**

Assuming that the Court was statutorily permitted to grant the application, EMIA next argues that the Applicants failed to provide the Court with all of the facts when it submitted its *ex parte* application; and, if the Court had been presented with those facts, it would have exercised its discretionary authority to deny the application.  In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), the United States Supreme Court enumerated four factors that should guide a court's determination of whether it will exercise its discretion under § 1782 and grant an application for judicial assistance. The Court will consider those four factors in turn below.[8]

**1.**    **Whether the Discovery is Sought from a Participant or a Nonparticipant in the Foreign Proceedings**

As stated by the Supreme Court in *Intel*:

> First, when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.

*Id.* at 264.  Exxon characterizes the Applicants' discovery request as "seeking discovery regarding Esso's operations in Honduras from Exxon," which is "entirely separate and distinct . . . from Esso" (DE # 15 at 5).  Exxon argues that because Esso "is subject to the jurisdiction of the Honduran courts" there is no need for this Court to provide judicial

---

[8]  Aside from the *Intel* factors, Exxon argues that the application for judicial assistance "should be denied" because the application relied on untranslated Spanish language documents.  Those documents have since been translated, and the undersigned finds no reason to require the application to be re-filed with the accompanying translated documents, as Exxon  suggests, where they have not demonstrated any benefit to doing so, nor indicated that they are prejudiced by proceeding on the current record.

-20-

assistance pursuant to § 1782 (DE # 15 at 16) ("If there were truly a bona fide active investigation resulting in criminal proceedings, the Honduran courts would be fully capable of ordering Esso to produce all the relevant information requested in the Application."). The Applicants challenge Exxon's characterization of the facts and argue that it seeks discovery from Exxon, which is not a participant in the foreign investigation.

The undersigned notes at the outset that a central dispute in this case concerns the corporate relationship between and among the three Exxon Entities (Exxon, EMIA and Esso) and the Exxon Entities have insisted that they are truly "entirely separate and distinct" corporations (*see, e.g.,* DE # 15 at 17). The Exxon Entities cannot argue that they are separate for the purposes of refusing service or denying control over discovery documents, while, at the same time, arguing that they are indistinguishable for the purpose of imputing Esso's status as a participant in foreign proceedings onto Exxon. The undersigned rejects the notion that Exxon shares Esso's status as a participant in the Honduran proceedings; and, therefore, whether the Honduran courts (or criminal investigating authorities) are capable of asserting the authority necessary to require Esso to produce discovery is not relevant to the question of whether similar information might be obtainable from Exxon.

Moreover, the parties have not discussed how to apply this factor to foreign criminal investigations prior to formal accusation generally, where the line dividing "participants" from "nonparticipants" is not as stark as it is in the run-of-the mill cases where the formal foreign proceedings are underway. The difference is potentially significant, as the relevant inquiry in a case like this one could arguably focus on the ability of the investigating authority, rather than the foreign court system, to obtain the

requested discovery.  The parties have offered little more than conclusory and speculative statements regarding the ability (or inability) of *any* relevant Honduran authority to corral documentary and testimonial evidence that may be present in this district (*see, e.g.*, DE # 15 at 18).  The identity of Exxon as a participant or a nonparticipant in the foreign criminal investigation, therefore, does not mandate reconsideration of the Prior Order granting the Applicants' request for judicial assistance.

> 2.   **The Nature and Character of Foreign Proceedings, the Receptivity of the Foreign Authorities to Judicial Assistance, and the Avoidance of Proof-Gathering Restrictions**

The undersigned will address the second and third *Intel* factors together below. The second *Intel* factor permits "a court presented with a § 1782(a) request [to] take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  And, the third *Intel* factor counsels that "a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Id*. at 265.  The undersigned concludes that it is not necessary to reconsider the Prior Order granting the Applicants' request for § 1782 assistance in light of the nature and character of the foreign criminal investigation or the receptivity of the Honduran authorities to U.S. federal-court judicial assistance.  The undersigned also concludes that there is no evidence that the application sought to avoid foreign or domestic proof-gathering restrictions.

Exxon argues that *Norex Petrol. Ltd. v. Chubb Ins. Co. of Can.*, 384 F. Supp. 2d 45 (D.D.C. 2005), a case decided after *Intel*, is instructive in this regard.  Contrary to Exxon's reading, *Norex* is inapplicable here.  The central inquiry in that case was whether "a party engaged in foreign litigation [may] obtain discovery from a domestic non-party where the documents at issue are held in a foreign country by the non-party's foreign parent corporation."  *Id*. at 46.  Thus, the *Norex* court engaged in a thorough review of cases addressing whether a domestic corporation could be required, pursuant to § 1782, to produce documents that it kept in a foreign country.  Exxon relies on dicta expressed by the *Norex* court in discussing why the then-recent *Intel* decision was inapplicable to the case at hand, stating simply that it "recognize[d] that the factors for a district court's consideration discussed by the *Intel* Court cut both for and against permitting discovery"; clarifying that it "has no information on the 'receptivity of the Canadian court to federal-court U.S. judicial assistance' . . ."; nor any information on whether the Canadian court maintains 'proof-gathering restrictions'"; and that "the parties' briefs do not suggest that Norex may be trying to circumvent any such restrictions in the Canadian court."  *Id*. at 54 (internal brackets omitted).  To say, as Exxon does, that *Norex* "warned against . . . prematurely seeking documents for an alleged investigation" in consideration of the factors laid out in *Intel* (DE # 15 at 13) gives too much weight to the passing statements that were expressed as dicta in *Norex*.

As in *Norex*, this Court has not been provided with any information indicating whether the Honduran prosecutor would be receptive or hostile to judicial assistance, nor has the Court been provided any information regarding any Honduran "proof-gathering" restrictions that the Applicants might seek to evade.  The Court recognizes that the Applicants may have a litigious history with Esso and that the Honduran

prosecutor's office has not yet sought discovery directly from Esso in furtherance of its investigation, which began as early as 2006.[9]  However, these facts alone do not establish that the Applicants have improperly "jumped the gun" by requesting discovery from the Exxon Entities regarding the investigation.  For the reasons stated above, the Applicants are not required to prove that all avenues of obtaining the discovery through Honduran procedures be exhausted before seeking relief under the judicial assistance statute.  *See Weber v. Finker*, No. 3:07-mc-27-J-32MCR, 2007 WL 4285362, at * 5 (M.D. Fla. Nov. 30, 2007).  Thus, in light of the twin aims of § 1782 – namely, to provide efficient assistance to participants in international litigation and to encourage foreign countries by example to provide similar assistance to our courts – the undersigned concludes that it is not appropriate to reconsider the District Court's Order granting the *ex parte* application for judicial assistance based on the newly-presented facts that Exxon introduced in support of its contention that the application was granted prematurely. *Intel*, 542 U.S. at 252.

### 3.     The Request is Not Unduly Intrusive or Burdensome

The fourth and final *Intel* factor states that "unduly intrusive or burdensome requests may be rejected or trimmed."  *Intel*, 542 U.S. at 265.  The requests in the case at bar appear to be narrowly tailored to the issues presented in the criminal investigation underway in Honduras. Moreover, although Exxon claims that the request is unduly intrusive or burdensome, they have made no specific showing of such within the

_____

[9]  The undersigned recognizes that Exxon also argues that the request is premature because it is made by a private party rather than the government.  However, Honduran law permits criminal investigations to proceed in this manner, and under the circumstances of this case, this fact does not alter the determinations regarding the applicability of section 1782.

meaning of section 1782, relying only on conclusory allegations.  To the extent, however, that Exxon seeks protection that is typically available in the context of discovery permitted under the Federal Rules of Civil Procedure, the undersigned has determined that those issues are more properly addressed by a Court empowered to issue the subpoena under Fed. R. Civ. P. 45.[10]

In sum, for the reasons stated above, the undersigned concludes that the jurisdictional requirements of Title 28, United States Code, Section 1782, have been satisfied with respect to the Application at issue, that the discretionary factors militate in favor of granting the Application, and that the Court has personal jurisdiction over Exxon.  That does not end the inquiry, however, since the Court must also determine whether the subpoena complies with the requirements of the Federal Rules of Civil Procedure.  For the reasons stated below, the undersigned concludes that it does not and that the Motion to Compel must be denied.

     D.    <u>Compliance With the Federal Rules of Civil Procedure</u>

          1.    <u>Service Upon Exxon Was Valid</u>

Exxon contends that, even if it is "found" in this District; and, even if the Applicants are entitled to relief under section 1782, the Court nevertheless cannot assert jurisdiction over this matter because it was not properly served.  For the reasons stated

---

[10]  It is at least arguable that the Court should "merge" the requirements of Rule 45 into its consideration of this final discretionary factor, and find that where the requirements of Rule 45 are not met, an Application for discovery pursuant to section 1782 should be denied.  The undersigned has elected to treat the Rule 45 issues separately however, in view of the fact that section 1782 imposes this as a separate requirement, and various courts, as discussed *supra.*, have also addressed compliance with Rule 45 as a distinct issue.  In this regard, the undersigned makes no determination regarding whether a subpoena can be validly issued by the United States District Court for the Northern District of Texas, acting under the "umbrella" of this case, or whether a separate Application must be filed.

below, the undersigned concludes that Exxon was properly served when service was made upon its registered agent.

The District Court's prior Order granting the application for judicial assistance required Esso and "the Latin-American division of its parent company, Exxon-Mobil Corporation" to provide certain documents and testimony relating to the Honduran criminal investigation (DE # 3).

Thus, in April 2008, the Applicants prepared a subpoena *duces tecum* addressed to Esso, as well as to the "Latin-American Division of Exxon Mobil Corporation," regarding the areas of inquiry set forth in the Court's Order (DE # 5, Ex. A).  That subpoena was refused by Exxon Corp.'s registered agent in Florida, however, since the name on the subpoena ("the Latin-American Division of Exxon Mobil Corporation") did not identically match the name of the entity registered in Florida ("Exxon Mobil Corporation").  Also, when a process server attempted to deliver the subpoena to 1 Alhambra Plaza, Coral Gables, Florida, it was also refused by the employees there, who stated that the office was used by EMIA exclusively, and not by Exxon Corporation (DE # 5, Ex. B at 1).

A revised subpoena directed to "Exxon Mobil Corporation" was similarly refused at the 1 Alhambra Plaza office for the same reason as before (DE # 5, Ex. F).  The revised subpoena was finally accepted by Exxon Corp.'s registered agent, though counsel for Exxon Corp. sent a letter to the Applicants' counsel stating that the subpoena was invalid for various reasons (DE # 5, Ex. J).

As things currently stand, Exxon contends that the subpoenas are "improper, invalid, null and void" because (1) the order granting the application for judicial assistance referred only to Esso and "the Latin-American division of Exxon Mobil

Corporation," but not Exxon Corp. itself; (2) the Applicants did not deliver the subpoena within the 10-day deadline required by this Court's Order (DE # 15 at 21-28); and, (3) their headquarters are outside the 100 mile limit for requiring a nonparty to produce documents or testimony under Federal Rule of Civil Procedure 45 (DE # 15 at 21-28).

The Applicants argue that Exxon's objections elevate form over substance, in light of the fact that an employee of Esso stated in a letter that Esso's sale of fuel in Honduras – which is purportedly the focus of the Honduran criminal investigation – is directed and controlled from its "headquarters in Coral Gables, Florida" (DE # 22 at 14-15), as well as the other evidence showing the close relationship between the three Exxon Entities.[11]  Thus, according to the Applicants, there must be documents relevant to the Honduran criminal investigation regarding Esso's fuel sales which can be found in Coral Gables, Florida, whether those documents are possessed by Esso itself, Esso's parent corporation (i.e., Exxon), or an entity that goes by a different name (i.e., EMIA). The Applicants in effect claim that the Exxon Entities have forced them into a catch-22, whereby the Applicants have information indicating that discoverable information is present in Coral Gables, Florida; but they are not sure of the precise name of the entity that possesses the information; and the Exxon Entities are stonewalling their efforts to obtain even the basic discovery necessary to determine the identifying information for the proper party upon whom process should be served.

Clearly, "[i]n the absence of service of process (or waiver of service by the

---

[11]  This evidence consists of a series of checks that were issued to Exxon, but cashed by Esso (DE # 22, Ex. C); the fact that EMIA's counsel stated in a letter than "[n]o representative of any Exxon Mobil entity will attend the deposition" (DE # 5, Ex. J at 1); and that a Dun & Broadstreet report that identifies EMIA as a subsidiary of Exxon Corp. and notes that "100% of [EMIA's] capital stock is owned by [Exxon Corp., its] parent company" (DE # 5, Ex. L at 1, 10).

defendant), a court ordinarily may not exercise power over a party . . . ."  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  Nevertheless, the requirements governing service of documents under the Federal Rules are not intended as pitfalls to trap the unwary.  *See Murray v. U.S. Postal Serv.*, 569 F. Supp. 794, 797 (N.D.N.Y. 1983).

In this case, the Applicants had a good faith belief that Esso's business practices which formed the basis for the criminal investigation in Honduras were controlled from its "Coral Gables headquarters" (DE # 22, Ex. B at 3); and, their belief that the Exxon Entities did not have distinct corporate identities was bolstered by the fact that checks the Applicants addressed to Exxon were cashed by Esso (DE # 22, Ex. C).

Thus, in light of the evidence in the record as a whole, the undersigned concludes that the Applicants and the District Court understandably referred to "the Latin-American division" of Exxon Corp. in the context of these proceedings.  The additional language referring to what Exxon states is a "non-existent entity" serves only to clarify the appropriate records custodian.  Exxon has not argued that it has been prejudiced by the inclusion of this language, and its registered agent was properly served.  Exxon does not dispute that it is subject to the jurisdiction of the courts in Florida, but contends that the records sought in the subpoena are held by a corporate representative in Texas, and therefore it cannot be compelled to produce those records here.  Thus, to the extent that the surplusage in the Order refers to a non-existent entity, that language is amended, *nunc pro tunc*, since clearly Exxon is the entity that was contemplated by the Application and Order, and Exxon has suffered no prejudice as a result of the misnomer.  *See generally Grandey v. Pac. Indem. Co.*, 217 F.2d 27, 29 (5th Cir. 1954); 3 James Wm. Moore et al., Moore's Federal Practice, § 15.16[2] and n.18 $ 18.1 (2010) (collecting cases).

-28-

As a final note, the undersigned rejects Exxon's contention that the Court's Order imposed a 10-day deadline for the Applicants to serve their subpoenas.  The language of the Order is unambiguous and states that, "[w]ithin ten (10) days of the execution of this Order, Esso . . . and . . . Exxon [Corp.] shall make available a principal officer [for] deposition [and] produce documents" in accordance with the Order (DE # 3).  There is simply no basis to interpret this plain language as imposing any sort of deadline on the Applicants to perform any act, including the service of any subpoenas, within 10 days.  The "execution" to which the Order refers is the service of the subpoena, not the signing of the Order--that language was intended to require Exxon to respond promptly to the Applicants' discovery requests.[12]

### 2.    The Requirements of Fed. R. Civ. P. 45

Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure provides that a court must quash or modify a subpoena if it "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or transacts business in person."

It is undisputed that Exxon is a New Jersey corporation and that its headquarters are in Irving, Texas.  Exxon represents to the Court that its relevant corporate representative with for the purposes of the deposition sought, and with custody and control over Exxon's documents, is located at its corporate headquarters.  The Applicants have failed to rebut this contention.

Although the Applicants contend that the relevant documents are located at

---

[12]  The argument that the subpoena was improperly issued because the case was administratively closed simultaneously with the entry of the Order authorizing the issuance of the subpoena is rejected as wholly frivolous.

EMIA's headquarters in the Southern District of Florida, they have failed to establish that EMIA should be considered an "agent" of Exxon, and they have not sought documents from EMIA.  In this regard, the Applicants argue that Exxon Corp. is the parent of EMIA and Esso; that EMIA is the Latin-American "division" or "department" of Exxon Corp.; and, that various other alter-ego or agency relationships exist between and among the three corporations.  As proof that these relationships exist, the Applicants cite: (1) a letter signed by one of Esso's employees in 2002, which states, in relation to a prior project between the parties, that "the procedure for approval and application of lease and loan funds . . . has commenced at our ExxonMobil Coral Gables headquarters" (DE # 22, Ex. B at 3); (2) the fact that Esso cashed checks from the Applicants that were issued to Exxon (DE # 22 at 15 & Ex. C); (3) the fact that EMIA's attorney objected to the service of subpoenas in this case by concluding that "[n]o representative of any Exxon Mobil entity will attend the deposition" (DE # 5, Ex. J at 1); and (4) a Dun & Broadstreet report that identifies EMIA as a subsidiary of Exxon Corp. and notes that "100% of [EMIA's] capital stock is owned by [Exxon Corp., its] parent company" (DE # 5, Ex. L at 1, 10).

The parties dispute the significance of these items of evidence – including, for example, whether the prior project was closely related to the subject matter that forms the basis of the alleged Honduran investigation at issue in this case, whether EMIA's counsel was really speaking on all of the Exxon Entities' behalf when he said that no Exxon Entity would appear for deposition, and whether the Dun & Broadstreet report is a reliable indication of the Exxon Entities' corporate structure.  Nevertheless, even if the Court were to construe all of these disputed matters in the Applicants' favor, the sum total of all of these isolated pieces of evidence do not overcome the affidavits provided by the Exxon Entities which clearly state that the none of the three corporations is an

alter ego of any other corporation.  For example, EMIA's Vice President submitted a Declaration under penalty of perjury stating that "EMIA is an independently incorporated and independently operated subsidiary" of Exxon; that Exxon does not control the daily operations of EMIA; that EMIA does not share bank accounts or maintain common corporate records in conjunction with Exxon; and, that Exxon does not maintain an office at the Coral Gables address of EMIA (DE # 15, Ex. I at 9-10).  One of Esso's managers provided a similar Declaration (DE # 16, Ex. A at 14-16).  As the Applicants have stated, under the law of the Eleventh Circuit, the legal separation between two entities should be disregarded where the local corporation is "merely an agent through which the [foreign] company conducts business in a particular jurisdiction or" where the local corporation lacks "any semblance of individual identity."  *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002).  Where the local corporation "has preserved some semblance of independence from the" foreign company, however, jurisdiction over the latter "may not be acquired on the basis of the local activities" of the former.  *Id.* at 1272 n.11.  Thus, the undersigned concludes that the fact that EMIA could properly be compelled to produce documents in this District is not relevant to the determination of whether Exxon may be compelled to do so.

Since Exxon's corporate headquarters are located in Irving, Texas, which is also the location of the corporate representative responsible for attending the deposition and producing any responsive documents, the requirements of Rule 45 have not been met.

The undersigned recognizes the concerns expressed by the Applicants that if they serve Exxon in Texas, Exxon will claim that its Texas corporate representative does not have control over its documents located in Miami.  However, in view of the representations to this Court by Exxon that its relevant corporate representative is

located at its headquarters, Exxon would be hard put to whipsaw the Applicants by making a contrary argument to the United States District Court for the Northern District of Texas.[13]

IV.    **CONCLUSION**

Based upon the above analysis, the undersigned concludes that although the jurisdictional and discretionary prerequisites for invoking the provisions of 28 U.S.C. § 1782 have been met, the Applicants have failed to satisfy the requirements of Fed. R. Civ. P. 45 since the subpoena compels the deposition of a corporate representative and the production of documents at a location which is more than 100 miles from the place where that person resides, is employed or regularly transacts business.  It is accordingly,

**ORDERED AND ADJUDGED** that the Applicants' Motion to Compel (DE # 5) is **DENIED.**  Under the circumstances of this case, each party shall bear its own fees and costs in connection with the instant motion.

**DONE AND ORDERED** in chambers in Miami, Florida, on January 19, 2011.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies provided via CM/ECF to:
All counsel of record

_____

[13]  Of course, this does not resolve the issue of whether Exxon has sufficient control over EMIA such that Exxon should be compelled to produce documents in the possession of its subsidiary.  In this regard, the undersigned notes that the Applicants declined to seek authorization to issue a subpoena to EMIA, an entity located in this District.